*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0459P (6th Cir.)
File Name: 03a0459p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

JEFFREY PERRY,
  *Plaintiff-Appellant,*

  *v.*    No. 02-1816

JAGUAR OF TROY, assumed
name for Somerset Auto
Collection, Inc.,
  *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-74015—Anna Diggs Taylor, District Judge.

Argued: December 2, 2003

Decided and Filed: December 30, 2003

Before: GUY and GILMAN, Circuit Judges; REEVES,
District Judge.*

—————————

*The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

—————————

## COUNSEL

**ARGUED:** William S. Stern, Southfield, Michigan, for Appellant. Patrice S. Arend, JAFFE, RAITT, HEUER & WEISS, Detroit, Michigan, for Appellee. **ON BRIEF:** William S. Stern, Southfield, Michigan, for Appellant. Patrice S. Arend, Melanie T. LaFave, JAFFE, RAITT, HEUER & WEISS, Detroit, Michigan, for Appellee.

—————————

## OPINION

—————————

RALPH B. GUY, JR., Circuit Judge. Plaintiff, Jeffrey Perry, appeals from the grant of summary judgment in favor of defendant, Jaguar of Troy, in this case brought under the Family Medical Leave Act (FMLA). 29 U.S.C. §§ 2601-2654. Perry claims that defendant violated the FMLA by refusing to allow him to return to his employment after taking leave to care for his son who has learning disabilities. Specifically, Perry argues that the district court erred when it held that he had not given sufficient notice and that his son did not have a serious health condition. After review of the arguments, the record, and the applicable law, we affirm.

### I.

Perry was employed by defendant as an auto parts counterperson when he sought leave in the summer of 2001 to care for his 13-year-old son, Victor Perry. Victor had been diagnosed with learning disabilities, attention deficit disorder (ADD), and attention deficit hyperactivity disorder (ADHD). Victor took medication to treat his impulse control problems. He visited a doctor every six months to check his physical condition and the effect of the drugs.

Victor was certified as "Educable Mentally Impaired." A school evaluation noted that he needed to "curb impulsive behavior." Victor functioned at a third-grade level in reading and a second-grade level in written language skills. Perry testified that Victor could brush his teeth and feed and dress himself. Victor rode the bus to and from school and attended a class for emotionally and mentally impaired students during the school year. When not in school, Victor played video games, watched television, and played with neighborhood kids. He also rode his bike and swam. After school, he stayed with a neighbor or went to the after-school day care program.

Prior to 2001, Victor was either watched by his mother or other family members during the summer months. Victor's mother was unable to watch him in the summer of 2001 because of her work schedule, and the family was forced to consider other arrangements. In his affidavit, Perry stated that Victor must be constantly monitored for safety reasons and to ensure that his behavior is socially acceptable. He also stated that they were unable to find affordable day care that would meet Victor's need for full-time attention from a child care provider in a "very controlled environment."

The defendant's employee handbook required medical certification for FMLA leave:

> Employees taking a leave under this policy are required to provide a medical certification of the condition and the need for the leave from the health care provider. Certification forms should be obtained from the Office Manager.

Perry testified in his deposition that he told his supervisor, Doug Manarv, at least two months before he wanted the leave that he needed to take time off to watch Victor. On April 4, 2001, Perry submitted an Employee Requested Time Off Form. Perry gave notice that he would not work from June 13 until August 27, 2001, for the stated reason of "child

care." There was no reference to the FMLA or Victor's special needs, and no medical certification was provided. Perry testified in his deposition, however, that he orally told Manarv that he was asking for leave under the FMLA, which he had read about in the employee handbook. Manarv "basically said okay," and there was no discussion about whether his position would be available at the end of the leave.

On June 29, 2001, approximately two weeks after Perry's leave began, defendant's office manager sent a letter to Perry that stated:

> This letter is to inform you that your leave of absence is not considered under The Family and Medical Leave act of 1993, please see attached for the eligibility requirements.
>
> You currently have benefits through AFLAC, we are informing them that you are on a leave of absence, and that they should bill you at your home. This became effective on June 18, 2001.
>
> Please call if you have any questions.

At the end of the summer, Perry contacted his supervisor about returning to work. He was informed that his position had been filled, and that no other positions were available. Perry thereafter brought this action seeking reinstatement and damages under the FMLA. The district court granted defendant's motion for summary judgment. This appeal followed.

## II.

We review the grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment

as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). There is no genuine issue for trial unless the nonmoving party has produced enough evidence to enable a jury to return a verdict for that party. *Id.* at 249. In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under the FMLA, an eligible employee is entitled to receive 12 workweeks of leave during any 12-month period to, among other things, care for a spouse, son, daughter, or parent if the spouse, son, daughter, or parent has a serious health condition. 29 U.S.C. § 2612(a)(1). Upon return from an FMLA leave, the employee is entitled to reinstatement to the same or an equivalent position without the loss of benefits (with some limited exceptions not applicable here). 29 U.S.C. § 2614. It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).

**A. Notice**

The defendant argues that summary judgment was proper because Perry did not provide sufficient notice since the written form did not reference the FMLA or Victor's health condition. To qualify for FMLA leave, the employee must give not less than 30-days' notice if the necessity for the leave is foreseeable. 29 U.S.C. § 2612(e). An employee is not required to expressly assert his right to take leave under the FMLA. 29 C.F.R. § 825.302(c) (2002). We have recognized that an employee gives sufficient notice when he provides enough information for the employer to reasonably conclude

that an event described in § 2613(a)(1) has occurred. *See Brohm, M.D. v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir.1998).

Perry argues that his employer was aware of his son's health condition because he discussed it often at work and because his son had visited the dealership in the past. Perry also testified in his deposition that he specifically mentioned the FMLA when he discussed the intended leave with his supervisor. On this record, it appears that defendant was given enough information reasonably to conclude that Perry was asking for leave under the FMLA. In any event, it is clear that at some point defendant knew, or at the very least presumed, that Perry was requesting leave that might qualify under the FMLA because it responded by denying FMLA leave. Thus, defendant is not entitled to summary judgment because of deficiencies in Perry's notice.

**B. Medical Certification**

Defendant also argues that it properly denied FMLA leave because Perry did not provide medical certification as required under the employee handbook. If the employee fails to provide requested medical certification, the leave does not qualify as FMLA leave. 29 C.F.R. § 825.311(b). The regulations, however, state that when an employee first asks for FMLA leave, the employer must give specific written notice of the employee's obligations, including the duty to provide medical certification and the consequences for failing to do so. 29 C.F.R. § 825.301(c)(2).[1] In addition, certification

---

[1] "Except as provided in subparagraph (ii), if the employer is requiring medical certification . . . , written notice of the requirement shall be given with respect to each employee notice of a need for leave." 29 C.F.R. § 825.301(c)(2)(i). Subsequent written notifications are not required if notice is given after the employee first requests leave and the employee handbook clearly provides that certification is required. 29 C.F.R. § 825.301(c)(2)(ii).

must be requested each time it is required. 29 C.F.R. § 825.305(a).[2]

Even though the need for medical certification was stated in defendant's employee handbook, the regulations required defendant again to ask for certification after Perry told his supervisor he wanted leave to watch his son over the summer. It is unclear on this record whether defendant requested certification after receiving Perry's notice and before denying FMLA leave. Because there is no evidence that defendant requested medical certification pursuant to the requirements of the FMLA, Perry's failure to provide medical certification does not support summary judgment for defendant.

## C. Serious Health Condition

Perry has a cause of action under FMLA only if Victor had a serious health condition that required Perry's care. *See Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1111-12 (6th Cir. 1997). The FMLA defines a serious health condition as an illness, injury, impairment, or physical or mental condition that involves (1) inpatient care in a hospital, hospice, or residential medical care facility; or (2) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). The regulations go on to define a serious health condition as an illness, injury, impairment, or physical or mental condition that involves:

(1) *Inpatient care* (*i.e.,* an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity (for purposes of this section, defined to mean inability to work, attend school or perform other regular daily activities due to the serious

---

[2] "An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301. An employer's oral request to an employee to furnish any subsequent medical certification is sufficient." 29 C.F.R. § 825.305(a).

health condition, treatment therefor, or recovery therefrom), or any subsequent treatment in connection with such inpatient care; or

(2) *Continuing treatment* by a health care provider . . . .

29 C.F.R. § 825.114(a) (emphasis in original).

"Continuing treatment by a health care provider" includes, in pertinent part:

(i) A period of *incapacity* (*i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.,* physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

. . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B)     Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C)   May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, *etc.*).

(iv)  A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective.   The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

29 C.F.R. § 825.114(a)(2) (emphasis in original).

Perry argues that Victor had a chronic or permanent serious health condition because he was under the periodic treatment of a physician. Perry offered evidence that Victor was seeing a doctor every six months to check his physical condition and the effect of the medications. Defendant argues that Victor was not receiving treatment because he did not see a doctor in the summer of 2001. Treatment "includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.114(b). Absences attributable to a chronic serious health condition under 29 C.F.R. § 825.114(a)(2)(iii) qualify for FMLA leave even if the employee or family member does not receive treatment from a health care provider during the absence. 29 C.F.R. § 825.114(e).

Even if Victor's biannual doctor visits constitute treatment, however, Perry must also present evidence that Victor was incapacitated in the summer of 2001. In order to have had a serious health condition, whether chronic or permanent, Victor must have been unable to work, attend school, or perform other regular daily activities during the period of Perry's leave.

In support of its motion for summary judgment, defendant presented evidence that Victor was able to attend school and engaged in the same daily activities in which most children engage:   riding the bus to and from school, riding bikes, swimming, playing video games, watching television, and playing with neighborhood friends. The burden then shifted to Perry to come forward with evidence showing that Victor was in fact incapacitated.

Perry argues that Victor was incapacitated because he could not perform regular daily activities when compared to other children without ADD and ADHD. Perry, however, points to no evidence to support this conclusory claim that Victor could not perform regular daily activities.[3]   The fact that a child with learning disabilities does not function at the same level as a child of the same age without learning disabilities sheds

---

[3]Defendant objected to the documents attached to Perry's response to the motion for summary judgment. After defendant filed its reply brief, Perry filed a Supplemental Affidavit which stated that the documents were copies of records from Victor's school and medical files. Federal Rule of Civil Procedure 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. Examples of such evidence include admissible documents or attested testimony, such as that found in affidavits or depositions. The proffered evidence need not be in admissible form, but its content must be admissible. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). Defendant argues that the affidavit was untimely and was not sufficient to authenticate the documents. Most of the documents are far removed in date from 2001 and, therefore, are not relevant to Victor's health condition in the summer of 2001. Two school reports are dated 2000 and 2001. They note that the clarity of Victor's speech decreases during spontaneous speech because of his rapid delivery, but note that one of Victor's strengths is his ability to communicate thoughts and engage in conversations with peers and adults. The 2000 report notes "difficulty" in gross motor and fine motor coordination, but the 2002 report notes that Victor participates in regular physical education classes. Thus, regardless of whether these documents can be considered on summary judgment, they do not address the question in this case:   Did Victor's health condition render him unable to work, attend school, or perform regular daily activities?

no light on whether that child can perform regular daily activities.

Perry also argues that Victor was incapacitated because he could not attend a regular day camp. Perry claims that Victor needed extraordinary supervision. A younger child with no learning disabilities, however, may also require more supervision. The comparative amount of supervision a child needs standing alone does not address the child's ability to engage in regular daily activities. The examples of behavior requiring extra monitoring given by Perry in his affidavit, if anything, refute Perry's claim that Victor could not engage in regular daily activities. Victor was found peeking into the windows of neighbors, biking on the service drive of a freeway, and making numerous telephone calls to video game companies. Even viewing the facts in a light most favorable to Perry, we cannot find that there is enough evidence in this record to enable a jury to reasonably conclude that Victor was incapacitated in the summer of 2001 and, thus, had a serious health condition qualifying Perry for an FMLA leave.

**AFFIRMED.**