[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 31, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10245

_____

D. C. Docket No. 04-00073-CV-OC-10-GRJ

JUNE CRUZ,

Plaintiff-Appellant,

versus

PUBLIX SUPER MARKETS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 31, 2005)**

Before BLACK, WILSON and COX, Circuit Judges.

WILSON, Circuit Judge:

This appeal concerns the notice requirement under the Family and Medical

Leave Act ("FMLA"). June Cruz appeals from the district court's order granting

Publix Super Markets, Inc. ("Publix") summary judgment on Cruz's FMLA interference and retaliation claims. The district court granted summary judgment because Cruz failed to provide sufficient notice to Publix that she was requesting leave for a potentially FMLA-qualifying reason. We affirm.

## I. BACKGROUND

Cruz was a long-term employee who worked in Publix's bakery department as a cake decorator. She worked for Publix from October of 1992 until her termination in November of 2003. In May of 2003, Cruz learned that her adult daughter was pregnant and was due to give birth to Cruz's second grandchild on November 1, 2003. After learning of her daughter's pregnancy, Cruz requested two weeks of unpaid leave from October 31, 2003, to November 16, 2003, to travel to Colorado for the birth of her grandchild, by filling out the appropriate "Time Away from Work" form. Despite the fact that Cruz had already used all of her vacation time for the year, Publix Store Manager Gary Southall approved Cruz's request for two weeks unpaid leave. Significantly, the leave was predicated on Publix's policy regarding unpaid leave, not the FMLA.

After Publix approved her leave, Cruz reminded Assistant Bakery Manager Lance Davis that because she was taking leave due to her daughter's pregnancy, she might have to leave for Colorado earlier than planned, if her daughter went into

2

labor earlier than expected. Davis responded, "Okay." At this time, Cruz, however, did not tell Davis that she might have to stay in Colorado longer than expected, nor did she request additional time off.

On or about October 15, 2003, Cruz learned that her daughter believed that she might deliver the baby early. That day, Cruz changed her flight to Colorado to leave two days later, on October 17th, which was two weeks before her leave was scheduled to begin.

The next day, on October 16, 2003, Cruz informed Davis that she thought her daughter was in labor and therefore she planned to leave the following day for Colorado. Cruz told Davis that she planned to return to work on November 17th, as previously scheduled, and Davis responded, "Okay." Davis immediately relayed the news of Cruz's change of plans to Southall and to Bakery Department Manager Justin Pierro, who called Cruz into the front office for a meeting.

Southall asked Cruz to explain her situation, and Cruz told them that she believed her daughter was in labor, that her daughter's husband broke his collarbone, and that her daughter needed her help. At no time did Cruz tell them that her daughter was having complications due to her pregnancy. Cruz also told Southall and Pierro that she had already changed her plane ticket to leave for Colorado the following day. Southall and Pierro agreed to allow Cruz's

3

previously-approved two weeks of unpaid leave to begin immediately, but refused to grant her more than two weeks of leave. It was at this point that Cruz asked, for the first time, whether she was eligible for "family leave." Believing that Cruz did not qualify for FMLA leave under the circumstances, Southall told her "no."

At the completion of the meeting, Cruz understood that she was approved for two – not four – weeks of unpaid leave. She admitted that she had a good suspicion that if she took four weeks of leave, she might be fired. During the meeting, Cruz even inquired as to how to reapply for a position with Publix when she returned.

Later that day, after meeting with the managers, Cruz inquired at the Publix personnel office to determine how an employee applies for leave under the FMLA. Cruz was told that she needed to provide a letter from her daughter's physician to the store coordinator, who would fill out the appropriate forms so that the FMLA leave could be approved. Cruz arranged for her daughter's physician to fax a letter to the store coordinator, which stated that her son-in-law had a broken collarbone and "is now unable to help with labor coaching." In addition, the letter stated that Cruz's daughter "feels she needs her mother to come help with labor etc, as she has no one else to help. We hope you agree with us that her Mother's presence would help their difficult situation at this time." Absent from the note was any indication

4

that Cruz's daughter was having complications due to her pregnancy.[1]  Cruz

provided the letter to the store coordinator and left for Colorado the next day.

When Southall received Cruz's FMLA leave application, including the letter

from Cruz's daughter's physician, he again denied her request using the

appropriate form because he did not believe she qualified for FMLA leave.  Publix

then scheduled Cruz to work her regular schedule during the work week beginning

November 1st, which was the week following her two weeks of approved leave.

However, Cruz did not return to work after her two weeks of leave were

over.  In fact, Publix did not hear from Cruz until four weeks later, on November

13th, when she called from Colorado to ask about her schedule.  At this time,

Publix informed Cruz that she had been terminated for job abandonment when she

---

[1]The entire text of the letter reads as follows:

October 16, 2003

To Whom It May Concern:

June Cruz, your employee is the mother of our patient June Santiago.  June (the
daughter) husband has a broken collarbone.  He was to be her labor coach during
labor.  He is now unable to help with the labor coaching.  June is due November
3, 2003.  She could deliver anytime between now and then.  She feels she needs
her mother to come to help with labor etc, as she has no one else to help.  We
hope that you agree with us that her Mother's presence would help their difficult
situation at this time.

Thank you,

Carol Heller, M. D.

failed to return to work after her two weeks of approved leave was over. Cruz's termination was effective on November 7, 2003, after Cruz failed to work the entire work week of November 1, 2003.

Cruz subsequently filed her complaint, alleging that Publix improperly denied her FMLA leave to care for her pregnant daughter who had a serious medical condition and was terminated in retaliation for exercising her rights under the FMLA. The district court determined that a genuine issue of material fact remained as to whether Cruz's daughter was "incapable of self-care because of a mental or physical disability," which would qualify Cruz for leave under the FMLA. *See* 29 U.S.C. § 2611(12)(B). Nevertheless, the district court granted summary judgment in favor of Publix on Cruz's FMLA claims because Cruz failed to give Publix sufficient notice that her leave was due to a potentially FMLA-qualifying reason.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same legal standards that bound the district court, and "viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1203 (11th Cir. 2001). Summary judgment is appropriate when "there is no

6

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III. DISCUSSION

The FMLA entitles an eligible employee to twelve work weeks of unpaid leave during any twelve-month period if she needs the leave in order "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "The term 'son or daughter' means a biological, adopted, or foster child, a step child, legal ward, or a child of a person standing in loco parentis, who is . . . under 18 years of age; or . . . 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12).

The FMLA requires employees to provide 30 days advance notice of the leave, when the need to take leave is foreseeable. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a). If, though the leave is foreseeable, "30 days notice is not practicable, such as because of a lack of knowledge of approximately when the leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). Similarly, if the need for leave is not foreseeable, notice must be given "as soon as practicable under the facts and circumstances of the particular case." *Id.* §

7

825.303(a). In interpreting the notice requirements of the FMLA, we held that "where an employee's need for FMLA leave is unforeseeable, the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a *potentially FMLA-qualifying reason*." *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) (emphasis added).

An employee is not required to assert expressly her right to take leave under the FMLA. 29 C.F.R. §§ 825.302(c), 825.303(b). However, the notice must be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Id.* § 825.302(c). Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection. *Strickland*, 239 F.3d at 1209 (citing 29 C.F.R. § 825.303(b)).

Furthermore, we note that being pregnant, as opposed to being incapacitated because of pregnancy, is not a "serious health condition" within the meaning of the FMLA. *See* 29 C.F.R. § 825.114(a)(2)(ii) (defining "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves incapacity due to pregnancy); *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 952 (7th Cir. 2004) (distinguishing being pregnant from being incapacitated

8

because of pregnancy, the former not being a "serious health condition" within the meaning of the FMLA). Thus, the protections of the FMLA do not extend to an employee taking leave to care for his or her adult child simply because that child is pregnant, unless, for example, that child is incapacitated due to the pregnancy. The parties do not contest this fact. Instead, because Cruz's daughter was over the age of 18, Cruz was required to prove that her daughter was "incapable of self-care because of a mental or physical disability," in order to prevail on her FMLA claims. *See* 29 U.S.C. § 2611(12)(B). In other words, Cruz must prove that her daughter was experiencing something beyond a normal pregnancy. The district court determined that a genuine issue of material fact remained as to this issue.

Cruz argues that Publix had sufficient notice that her leave was due to a potentially FMLA-qualifying reason because she told management that she believed her daughter was in labor, that her daughter's husband broke his collarbone, and that her daughter needed her help. She provided a letter from her daughter's physician confirming that her daughter felt she needed her to help with labor. Cruz argues that this information was sufficient to shift the burden to Publix to determine whether she qualified for FMLA leave. She further argues that the burden was on Publix to request any additional information it needed to consider her request. She asserts that Publix did not fulfill its burden, but instead, made an

impulsive decision to deny her request for FMLA leave before requesting the additional information from her and her daughter's physician that would have been sufficient to substantiate her qualification for FMLA leave.

In support of this position, Cruz cites several cases in which courts ruled that the employees provided sufficient notice to their employers for FMLA purposes, despite the fact that the employees either did not reference the FMLA or did not reference their family member's health condition or special medical needs when requesting FMLA leave. We find that these cases, however, do not support the position that Cruz is advancing in this case. In *Perry v. Jaguar of Troy*, 353 F.3d 510, 512-13 (6th Cir. 2003), the employee provided sufficient notice that he was requesting FMLA leave to care for his learning disabled son, even though the stated reason on his written request for time off was for "child care" and the written request did not reference the FMLA or the child's health condition or special needs. The court concluded that the employer was given enough information reasonably to conclude that the employee was asking for leave that might qualify under the FMLA because the employer was previously aware of his son's health condition. *Id.* at 513. The employee discussed it often at work, his son had visited the workplace in the past, and the employee later mentioned the FMLA when he discussed the intended leave with his supervisor. *Id.*

10

Likewise, in *Zawadowicz v. CVS. Corp.*, 99 F. Supp. 2d 518, 529 (D.N.J. 2000), the court concluded that, even though the employee did not provide a reason for his intermittent absences, a genuine issue of material fact remained as to whether the employee provided sufficient notice that his absences were related to his wife's serious health condition. The employee's wife, who was also the defendant's employee, sustained an on-the-job injury that resulted in her serious health condition. *Id.* at 522. Moreover, the employee previously had taken FMLA leave to care for his wife for this same condition. *Id.* at 522-23. Under these circumstances, a reasonable jury could conclude that the employer knew that the employee's absences were due to his wife's serious health condition. *Id.* at 529.

Finally, in *Mora v. Chem-Tronics Inc.*, 16 F. Supp. 2d 1192, 1211-1216 (S.D. Cal. 1998), the court held that the employee gave sufficient notice on two occasions of his need for intermittent FMLA leave to care for his son. On both occasions, the employee explained that his absence from work was because his son was HIV positive and was sick. *Id.* at 1211-12, 1216. The court concluded that he provided sufficient notice to the employer because, as a matter of common sense, an employer who is notified that an employee's child has HIV and is sick would conclude that a serious medical condition is involved. *Id.* at 1212.

In each of these cases, the employee adequately conveyed to the employer

11

sufficient information to put the employer on notice, either at the time of the request or before, that his absence was potentially FMLA-qualifying. The employer was well apprised of the employee's family member's medical condition and had reason to believe that this condition was the reason for the employee's absence. Conversely, in this case, Cruz admittedly provided no information to Publix managers to make them aware of her daughter's alleged serious health condition. Cruz told Southall and Pierro that she believed her daughter was in labor and that her daughter needed her help due to her son-in-law's broken collarbone. The physician's letter conveyed that Cruz's daughter felt she needed Cruz to help her with delivery. Publix had no indication from these communications that Cruz's daughter was experiencing anything other than a normal pregnancy. Therefore, Cruz did not notify Publix of any condition that could potentially qualify Cruz for FMLA leave at the time of Cruz's request or before her request.

In contrast to the cases cited by Cruz, we find the factually-similar case of *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 952 (7th Cir. 2004), instructive. In *Aubuchon*, the employee orally notified his employer that he wished to take FMLA leave shortly after his wife experienced false labor, a month before her expected delivery date. *Id.* at 952. The employee did not give complications,

false labor, or a serious health condition as a reason for the leave; rather, he requested the leave because "he wanted to stay home with his wife until she gave birth." *Id.* The court noted that "[b]eing pregnant, as distinct from being incapacitated because of pregnancy or experiencing complications of pregnancy that could include premature contractions which unless treated by drugs or bed rest might result in the premature birth of the baby, is not a serious health condition within the meaning of the [FMLA] or the applicable regulations." *Id.* Therefore, "[w]anting to stay home with one's wife until she has the baby, while understandable, is not the same thing as wanting to stay home to care for a spouse who has a serious health condition." *Id.*

The *Aubuchon* court granted summary judgment in favor of the employer, concluding that the employee failed to give his employer sufficient notice to invoke protection under the FMLA. *Id.* The note that was later provided by the employee's wife's physician, which stated that the employee's wife was experiencing "complications," would have been sufficient notice, despite the absence of any further details, but the employee did not submit the note until *after* his request for leave had been denied. *Id.* at 953. The court explained:

> Employees should not be encouraged to mousetrap their employers by
> requesting FMLA leave on patently insufficient grounds and then
> after leave is denied obtaining a doctor's note that indicates that
> sufficient grounds existed, though they were never communicated to

13

the employer.

*Id.* The employee cannot merely demand leave; he must give the employer a reason to believe that he is entitled to it. *Id.* at 952. For example, "[i]f you have brain cancer but just tell your employer that you have a headache, you have not given the notice that the [FMLA] requires." *Id.* Thus, the notice requirement was not satisfied because the employee did not give complications or a serious health condition as the reason for taking leave, but merely expressed his desire to stay with his wife until she gave birth. *Id.* at 952-53.

In reaching this decision, the *Aubuchon* court relied on our precedent in *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). *Id.* at 953. When requesting FMLA leave, the employee in *Gay* deliberately withheld information concerning the true nature of his wife's medical condition that led to his request for leave. *Gay*, 125 F.3d at 1436. We determined that "[u]nder these circumstances, the burden to request further information never shifted to [the employer] because [the employer] could not reasonably be expected to conclude that [the employee's] absence might have qualified for treatment under the FMLA." *Id.* Therefore, we held that "[w]hen notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA." *Id.*

14

Although Cruz did not deliberately mislead Publix as to the facts and circumstances surrounding her request for leave, our analysis in *Gay* is applicable. Like the employee in *Gay*, Cruz admittedly withheld critical information regarding the reason for her request. Cruz did not volunteer the additional information about her daughter's alleged pregnancy complications, but merely offered her own belief that her daughter was going into labor, that her son-in-law had a broken collarbone, and that her daughter needed her help as reasons for the leave. These facts are insufficient to shift the burden to Publix to request further information because Publix could not reasonably be expected to conclude that her absence qualified for FMLA leave. We cannot expect Publix to undergo an investigation to uncover some possible circumstance under which Cruz would be entitled to FMLA leave when Cruz never raised any such circumstance. Unless the employer already knows that the employee has an FMLA-approved reason for leave, the employee must communicate the reason for the leave to the employer; the employee cannot just demand leave. *See Aubuchon*, 359 F.3d at 953.

Our precedent requires that an employee "provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason." *Gay*, 125 F.3d at 1436. In other words, Cruz was obligated to inform Publix that her daughter was experiencing complications due to

her pregnancy, was unable to care for herself, or provide some other indication that her adult daughter was "incapable of self-care because of a mental or physical disability." *See* 29 U.S.C. § 2611(12)(B). Only then would the burden to inquire further shift to Publix. Under the circumstances presented here, Cruz did not provide Publix with that kind of notice, but merely expressed her desire to assist her adult daughter during the birth of her grandchild, a condition which the FMLA does not cover.

## IV.CONCLUSION

We affirm the district court's grant of summary judgment in favor of Publix.

**AFFIRMED.**