[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11718
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 4, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-01350-LSC


REGINALD D. LEE,

Plaintiff-Appellant,


versus


UNITED STATES STEEL CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 4, 2012)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Reginald Lee, an African-American male, appeals the district court's grant of summary judgment in favor of United States Steel Corporation ("U.S. Steel") on his claims of interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615(a), and race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981. On appeal, Lee first argues that he adequately raised a claim of interference under the FMLA in the district court. He maintains that, after he provided U.S. Steel with information of a potentially FMLA-qualifying illness, U.S. Steel was on notice that he might be eligible for FMLA leave, and, as a result, it then became obligated to either count his absence as FMLA leave or to follow the procedures set out in the statute and regulations designed to prevent employee abuse. Next, Lee argues that he was terminated within a month of requesting FMLA-qualifying leave and the close temporal proximity between taking FMLA-qualifying leave and the U.S. Steel's act of terminating him provides sufficient circumstantial evidence of causation in his retaliation claim. Lastly, Lee states that he established a prima facie case of race discrimination because the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside his protected class, a white co-worker named Russell Snell, who was not terminated.

After thorough review of the record and the parties' briefs, we affirm.

2

I.

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is appropriate where the moving parties demonstrate, through materials in the record, that no genuine issue of material fact exists, and they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a), (c). Once a party properly supports a motion for summary judgment by demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Chapman, 229 F.3d at 1023 (quotation omitted).

Under the FMLA, eligible employees are entitled to up to 12 workweeks of unpaid leave during any 12-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" denotes "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital . . . ; or (B) continuing treatment by a health care provider." Id. § 2611(11).

3

The FMLA does not define the phrase "continuing treatment by a health care provider," but the Department of Labor has issued a regulation defining that phrase, in relevant part, as a period of incapacity, including an inability to work, for more than three consecutive calendar days, and any subsequent treatment or period of incapacity related to the same condition that also involves (1) treatment by a health care provider on two or more occasions, or (2) treatment by a health care provider on at least one occasion that results in a regimen of continuing treatment under the supervision of the health care provider. Russell v. North Broward Hosp., 346 F.3d 1335, 1342 (11th Cir. 2003) (citing 29 C.F.R. § 825.114(a)(2)(i)). We have held that "more than three consecutive calendar days" of incapacity entails a period of 72 hours or more. Id. at 1344-45.

Although an employee requesting FMLA leave need not expressly mention the Act, he must provide at least verbal notice sufficient to make the employer aware of both the need for qualifying leave and its anticipated timing and duration. 29 C.F.R. §§ 825.301(b), 825.303(b). The FMLA also grants employees the right to reinstatement at their former position or its equivalent upon return from leave. 29 U.S.C. § 2614(a)(1)(A).

Generally, employees are required to provide employers with at least 30 days' notice before taking FMLA leave. Id. § 2612(e)(2)(B). When advance notice is not

4

practicable because the need for leave is unforeseeable, the employee should give the employer notice as soon as practicable. Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005). When "an employee's need for FMLA leave is unforeseeable, the employee need only provide [his] employer with notice sufficient to make the employer aware that [his] absence is due to a potentially FMLA-qualifying reason." Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997). Not all leave requested or taken for medical reasons qualifies for FMLA protection, however. Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000). "Unless the employer already knows that the employee has an FMLA-approved reason for leave, the employee must communicate the reason for the leave to the employer; the employee cannot just demand leave." Cruz, 428 F.3d at 1385. When an employee provides the employer with sufficient notice "that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection." Id. at 1383.

To protect the availability of these rights, the FMLA prohibits employers from interfering with, restraining, or denying "the exercise of or the attempt to exercise" any rights guaranteed under the Act. 29 U.S.C. § 2615(a)(1). We have recognized that "§ 2615(a) creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights

5

under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (quotation omitted). To establish an interference claim, an employee must demonstrate by a preponderance of the evidence that he was denied a benefit to which he was entitled under the FMLA. Id. "The employee need not allege that his employer intended to deny the benefit -- the employer's motives are irrelevant." Id. (quotation omitted). "'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

The district court properly granted summary judgment against Lee's claim of interference under the FMLA. Lee presented no evidence to show that his alleged back injury was a serious medical condition that rendered him eligible for FMLA-qualifying leave. First, Lee never applied for FMLA leave or gave his employer sufficient notice that his absence was due to a potentially FMLA-qualifying reason. According to Lee, he called his supervisors on June 18 and informed his shift manager that he had injured his back while changing a tire and would be off work for three days until June 22. He then called back on each day he was absent from work to confirm that he would be out for the day. Next, Lee produced a total of three

6

medical certificates, two of which indicated that he had been seen by a doctor on June 18, and a third stated that he had been seen by a doctor on June 24 and cleared to return to work that same day. The medical certificates simply noted that he had been seen on both June 18 and June 24, and listed the dates that he could return to work. Lee also relies on copies of his medical records dated June 18 and June 24 from Middle Creek Medical Center. The records indicate that Lee had been seen for back pain that was described in general terms as "mild," "constant," and "tight." These medical certifications were insufficient, however, to establish that Lee's condition rendered him incapacitated for a period of 72 hours or more. Russell, 346 F.3d at 1342, 1344-45. The medical certificates simply stated that Lee had been seen by a health care provider on both June 18 and June 24, but there is nothing to indicate that he was unable to perform his job duties during that time period or that he was undergoing a regimen of continuing treatment. Id. at 1342; 29 C.F.R. § 825.114(a)(2)(i). As a result, Lee's phone calls to U.S. Steel and the medical certificates failed to demonstrate, or provide sufficient notice to U.S. Steel, that Lee had a "serious health condition" entitling him to FMLA benefits. 29 U.S.C. § 2612(a)(1)(D).

II.

To establish a claim of FMLA retaliation, an employee must demonstrate that

7

his employer intentionally discriminated against him for exercising a right guaranteed under the Act. Martin v. Brevard Cnty. Pub. Sch., 543 F.3d 1261, 1267 (11th Cir. 2008). "Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Id. at 1267-68 (quotation omitted).

Absent direct evidence of retaliatory intent, we apply the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Martin, 543 F.3d at 1268. Under this framework, the employee bears the initial burden of establishing a prima facie case of FMLA retaliation. Id. If the employee successfully demonstrates a prima facie case, the burden then shifts to the employer "to articulate a legitimate reason for the adverse action." Id. (quotation omitted). Once an employer does so, "the employee must then show that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Id. (quotation omitted).

To establish a prima facie case of FMLA retaliation, an employee "must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected

activity." Id. Close temporal proximity between an employee's protected conduct and the adverse employment action "is generally sufficient circumstantial evidence to create a genuine issue of material fact of a casual connection." Hurlbert, 439 F.3d at 1298 (quotation omitted). However, "[a]n exception to this rule applies where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Id. (quotation omitted).

Lee failed to establish a prima facie case of retaliation under the FMLA because he did not show that he engaged in statutorily protected activity or that U.S. Steel's decision to terminate him was causally related to any protected activity. Although he was fired approximately a month after taking medical leave, Lee was unable to show that his supervisors at U.S. Steel were aware that his absence qualified as leave under the FMLA. As noted above, although Lee called into work to report his absence for a back injury on June 18 and produced medical certificates dated June 18 and June 24 to show that he had been seen by a healthcare provider on two separate occasions, there was insufficient evidence to show that Lee had a "serious medical condition" or that U.S. Steel was on notice that his leave potentially qualified under the FMLA. Accordingly, Lee failed to show that he engaged in statutorily protected activity or that the decision to terminate him was causally related to any protected activity. Martin, 543 F.3d at 1268.

## III.

Title VII prohibits an employer from discriminating against a person based on race. 42 U.S.C. § 2000e-2(a)(1). Likewise, under 42 U.S.C. § 1981, an employee has the right to be free of intentional racial discrimination in the performance of a contract. The elements required to establish a § 1981 claim are the same as those required to establish a Title VII disparate treatment claim. Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 n.11 (11th Cir. 2000).

A plaintiff may establish a discrimination claim through the introduction of direct or circumstantial evidence or statistical proof of discrimination. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). Where, as here, the plaintiff relies on circumstantial evidence of discrimination, we apply the burden-shifting framework articulated in McDonnell Douglas. Alvarez, 610 F.3d at 1264. A plaintiff establishes a prima facie case of race discrimination by showing that "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

To establish that a defendant treated similarly situated employees more favorably, a plaintiff must show that his comparators are "similarly situated in all

10

relevant respects." Id. In determining whether employees are similarly situated in cases involving allegedly discriminatory discipline, we evaluate "whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (quotation omitted). The quantity and quality of the comparator's misconduct must be "nearly identical" to the plaintiff's misconduct in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. Also, proffered comparators' actions are only relevant if the plaintiff shows that the decisionmaker knew of the prior similar acts and did not discipline the rule violators. Jones v. Gerwens, 874 F.2d 1534, 1542 (11th Cir. 1989).

If the plaintiff presents a prima facie case, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. Alvarez, 610 F.3d at 1264. If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination. Id. A reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Where the defendant offers the plaintiff's violation of a work rule as its reason for the termination, the reason "is arguably pretextual when a plaintiff submits

11

evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir.1999) (involving a claim under the Age Discrimination in Employment Act ("ADEA")). Ultimately, an employee must meet the employer's stated reason "head on and rebut it, and [the employee] cannot succeed by simply quarreling with the wisdom of that reason." Alvarez, 610 F.3d at 1266 (quotation omitted).

In this case, the district court did not err in granting U.S. Steel summary judgment on Lee's race discrimination claims. There is no dispute that Lee belongs to a racial minority, that he was subject to an adverse job action through his termination, or that he was qualified to do his job. Lee failed to demonstrate, however, that U.S. Steel treated a similarly situated employee outside of his protected class more favorably. First, there is nothing to indicate that Snell and Lee had similar job duties or responsibilities. More importantly, there is no evidence to show that Lee and Snell engaged in nearly identical conduct, but were disciplined in different ways. Maniccia, 171 F.3d at 1368; Holifield, 115 F.3d at 1562. Lee's principal argument that he was subject to termination for taking medical leave, similar to Snell, is without merit. In his declaration, Snell stated that he called in sick to work from June 13 to

12

June 15 to attend his daughter's wedding after he unsuccessfully sought vacation for those same days, and Self also testified that Snell took off two days for his daughter's wedding by reporting sick for the first day and taking a personal day for the second day. On the other hand, U.S. Steel's Department Manager of Employee Services explained that records indicated that Snell was at work on all three days from June 13 to June 15.

Even after viewing all the evidence and drawing all reasonable inferences in Lee's favor, see Chapman, 229 F.3d at 1023, Lee still fails to demonstrate that he and Snell were similarly situated. Even if Snell was absent for his daughter's wedding, Lee failed to rebut evidence presented by U.S. Steel demonstrating that, prior to the current incident, Lee, unlike Snell, had accrued enough absences under the absenteeism policy to warrant counseling and that he had been warned that his attendance record had to improve or otherwise he would be subject to further discipline. In addition, unlike Snell, Lee could not afford to be absent without cause because he already had accumulated too many unexcused absences and he did not have enough vacation time to take four days off. As a result, Lee and Snell were not "similarly situated in all relevant respects" and their respective instances of misconduct were not "nearly identical," and Lee therefore failed to present a prima facie case of racial discrimination. Maniccia, 171 F.3d at 1368; Holifield, 115 F.3d

at 1562.

**AFFIRMED.**