[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12261
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00063-WS-CAS


ROBERT JOSEPH WOOD,

Plaintiff-Appellant,

versus

GILMAN BUILDING PRODUCTS INC,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 22, 2019)

Before TJOFLAT, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Robert Wood appeals following the district court's grant of summary judgment to his former employer Gilman Building Products, Inc.  Wood claims that Gilman engaged in disability discrimination, interfered with his exercise of rights under the Family Medical Leave Act ("FMLA"), and retaliated against him for exercising rights under the FMLA.  After careful consideration, we affirm.

## I.    FACTUAL BACKGROUND

Gilman operates a sawmill in Perry, Florida.  Wood worked at the mill until he was terminated for purportedly violating the mill's attendance policy.

Gilman required its employees to comply with a strict attendance policy.  The policy set forth a progressive discipline scheme for employees who accumulated "occasions."  Doc. 13-1 at 88.[1]  An employee accrued an occasion each time he had an unexcused absence, was tardy to work twice, or left work during the first half of a shift.  Gilman defined an unexcused absence as an employee missing work for a personal illness without a satisfactory explanation; missing work for personal business without prior approval; or any absence that was not called in when it occurred, unless there was an extremely compelling reason for the failure to report.  Gilman further expected its employees to give as much notice as possible of any unexpected absence and required, except in extreme cases, that employees give notice at least two hours prior to the start of a shift.

---

[1] "Doc. #" refers to the numbered entries on the district court's docket.

2

Under the attendance policy, occasions were measured over six-month periods.  Upon the happening of a first occasion, an employee received verbal counseling, and a new six-month period began.  If the employee accrued a second occasion during these six months, he received a written reprimand and a new six-month period began.  If the employee received a third occasion during this six-month period, he was suspended for one day.  Upon receiving a third occasion, a new six-month period began.  If the employee accrued a fourth occasion during this six-month period, he was terminated.

Pursuant to this attendance policy, Wood was subject to a series of disciplinary actions.  Wood accrued his first occasion in September 2013 because he was late to work in June and September 2013.  He was warned that the next occasion would result in a written reprimand.

In February 2014 (less than six months after the first occasion), Wood was absent from the mill without a proper excuse, which resulted in a second occasion.  As a result, Wood received a written reprimand and was warned that the next occurrence would result in a one-day suspension.

Gilman then monitored Wood's attendance for a six-month period to see if he had a third occasion.  About a month into this period, Wood twisted his ankle in a non-work-related incident.  Because Wood was required to use crutches, he was unable to work at the mill and took a thirteen week leave of absence from work.

3

When Wood's doctor cleared him to return to the mill in June 2014, he came back to the same position with Gilman.

In September 2014, a few months after Wood returned to the mill, he had an unexcused absence. Gilman determined that this incident qualified as a third occasion and imposed a one-day suspension. Although more than six months had passed since Wood's second occasion, Gilman found that the incident qualified as a third occasion. The company told Wood that because he had been out of work for thirteen weeks on a non-work-related injury, the six-month window had been extended by thirteen weeks. Gillman warned Wood that if one more occasion occurred in the next six months he would be terminated. Wood understood that if he received another occasion in the next six months that he would be terminated.

One morning in January 2015, Wood slipped on stairs in his home and hurt his knee. That day, Wood arrived at the mill about an hour late and left about an hour later due to his injuries. Gilman marked Wood as late unexcused, which counted as half an occasion. Later that day, Wood saw a doctor who recommended that he stay home from work for two days. After taking off two or three days, Wood returned to the mill.

When Wood returned to the mill, he tried to provide his supervisor with his doctor's note but was told that such notes would no longer be accepted from any

4

employees to excuse absences.  Wood was permitted to return to work, and there is no evidence that Wood's knee caused him any problems after he returned to work.

About a week later, Wood arrived late to the mill again.  Because this was his second tardy, Wood accrued another occasion, his fourth.  Gilman terminated Wood for failing to comply with the company's attendance policy.

After his termination, Wood sued Gilman alleging that he was the victim of disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act.  Wood also alleged that Gilman violated the FMLA by interfering with his attempts to take leave and retaliating against him for taking leave.  Gilman moved for summary judgment on all of Wood's claims.  The district court granted summary judgment to Gilman.  This is Wood's appeal.

## II.    STANDARD OF REVIEW

"We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party."  *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018).  Summary judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict

5

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A movant may carry its burden of showing no genuine dispute of material fact by showing "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## III.    DISCUSSION

Wood contends that Gilman (1) discriminated against him in violation of the ADA, (2) interfered with his substantive rights in violation of the FMLA, and (3) retaliated against him for engaging in statutorily protected activity in violation of the FMLA.  We consider in turn whether the district court erred in granting summary judgment on each of these claims.

## A.    The District Did Not Err in Granting Summary Judgment to Gilman on Wood's ADA Claim.

We first consider Wood's claim that Gilman engaged in disability discrimination in violation of the ADA.[2]  The ADA prohibits employers from discriminating against qualified individuals on the basis of disability in regard to the discharge of employees or other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential

---

[2] Disability discrimination claims brought under the Florida Civil Rights Act are analyzed using the same framework as for similar claims brought under the ADA.  *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263-64 (11th Cir. 2007).  We thus need not address the FCRA claim separately.

6

functions of the employment position that such individual holds or desires." *Id.*
§ 12111(8).

Wood sought to prove his disability discrimination claim using circumstantial evidence and the *McDonnell Douglas*[3] framework. Under this framework, the plaintiff has the initial burden to establish a prima facie case of disability discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). To establish a prima facie case of disability discrimination, the plaintiff must show "(1) a disability, (2) that [he] was otherwise qualified to perform the job, and (3) that [he] was discriminated against based upon the disability." *Id.* If the plaintiff establishes a prima facie case, there is a presumption that discrimination occurred. *Smelter*, 904 F.3d at 1288. "The burden then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for its action[]." *Id.* If the employer meets this burden of production, the presumption raised by the prima facie case is rebutted and the burden shifts back to the employee to show that the employer's proffered reason was actually a pretext for illegal discrimination. *Id.*

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C.

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

§ 12102(1).  Major life activities include:  "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* § 12102(2)(A).  Although "[i]mpairments that last only for a short period of time are typically not covered," they may be covered "if sufficiently severe."  29 C.F.R. Pt. 1630, app.  An employee must establish that he had a disability or was regarded as having a disability at the time of the adverse employment action about which he is complaining.  *See Cash v. Smith*, 231 F.3d 1301, 1306 n.5 (11th Cir. 2000).

Wood contends that he was disabled and that he suffered an adverse employment action when Gilman (1) extended the period of monitoring his attendance after Wood returned from the leave and (2) terminated him, both based on his disability.  But Wood failed to come forward with evidence showing that he was actually disabled or perceived as disabled at either time.

First, we consider whether Wood was disabled or regarded as having a disability when Gilman extended the period of monitoring Wood's attendance upon his return from leave for his ankle injury.  We assume that during the period when Wood was on crutches and unable to work at the mill, he was disabled.  *See* 42 U.S.C. § 12102(2)(A) (defining as a disability a physical impairment limiting an individual's ability to walk).  But Wood admits that by the time that he returned to

8

work, his injuries had healed, and he could perform all major life activities. Indeed, Wood advances no argument that upon returning to work he experienced any physical or mental impairment that substantially limited one or more life activities. Wood also failed to come forward with evidence that would support an inference that anyone at Gilman thought or perceived that he was disabled after he returned from leave. Wood thus failed to show that he was either actually disabled or perceived as disabled when Gilman took the allegedly discriminatory action.

Second, we consider whether Wood was disabled or regarded as having a disability when he was terminated. To support his claim of disability, Wood points to the fact that shortly before his termination he missed two or three days of work due to a knee injury. True, Wood missed two or three days of work due to his knee injury. But no reasonable jury could find that Wood was disabled when he returned to work because there is no indication that upon returning to work Wood experienced any impairment that substantially limited his major life activities.

We also cannot say that Gilman perceived Wood as disabled when he returned to work after injuring his knee. Wood offers no evidence that would support an inference that, after Wood missed two or three days to his knee injury, anyone at Gilman regarded him as having a physical or mental impairment that substantially limited one or more major life activities. Because Wood failed to

come forward with evidence that he was disabled or perceived as disabled, the district court properly granted summary judgment to Gilman on the ADA claim.

## B.    The District Court Did Not Err in Granting Summary Judgment to Gilman on Wood's FMLA Claims.

Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The Act further guarantees an employee the right to be restored to the position he held when his leave commenced, or an equivalent position.  *Id.* § 2614(a)(1)(A)-(B); *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008).  In addition, the FMLA protects the substantive rights it creates by prohibiting an employer from retaliating against its employee for engaging in activities protected under the FMLA.  29 U.S.C. § 2615(a)(1)-(2).

Wood alleges that Gilman violated the FMLA by (1) interfering with his FMLA rights and (2) retaliating against him after he engaged in protected activity. We conclude that the district court properly rejected each FMLA claim.

### 1.    The Interference Claim

We begin by considering Gilman's interference claim.  To state an interference claim, an employee must show that (1) he "was entitled to a benefit under the FMLA" and (2) his employer "denied [him] that benefit."  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).  To be

10

entitled to benefits under the FMLA, an employee must have a "serious health condition."  29 U.S.C. § 2612(a)(1)(D).  A serious health condition includes "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  *Id.* § 2611(11).  This type of serious health condition includes a condition resulting in "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition."  29 C.F.R. § 825.115(a).

If an employee can demonstrate that he was entitled to a benefit, he generally "need only demonstrate by a preponderance of the evidence that []he was entitled to an FMLA benefit that was denied."  *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018).  "In general, the employer's motives are irrelevant to an interference claim."  *Id.* (internal quotation marks omitted).  But "[w]here the claim is based on an employee's termination . . . as [Wood's] claim is here, an employer may affirmatively defend against the claim by establishing that it would have terminated the employee regardless of [his] request for or use of FMLA leave."  *Id.*

Wood argues that Gilman interfered with his FMLA rights by failing to restore him to the same position that he previously held when he returned to work after taking leave for his ankle injury.  But we decline to consider this argument

11

that Wood raises for the first time on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

Wood also argues that Gilman interfered with his FMLA rights by terminating him shortly after he injured his knee.  But Wood cannot show that he was entitled to FMLA benefits at the time he was terminated because his knee injury did not qualify as a "serious health condition" under the FMLA.  *See* 29 U.S.C. § 2612(a)(1)(D).  Viewed in the light most favorable to Wood, the evidence showed that Wood received care from a doctor who ordered him to stay home from work for two days and that he missed two or three days of work due to the knee injury.  Because there is no evidence that Wood was incapacitated for more than three full calendar days or would need any subsequent treatment for his knee injury, the district court did not err in granting summary judgment on the FMLA interference claim.

### 2.    The Retaliation Claim

We now turn to Wood's FMLA retaliation claim.  Wood sought to prove his retaliation claim using the *McDonnell Douglas* circumstantial evidence framework. To establish a prima facie retaliation case, an employee must demonstrate that: (1) he "engaged in statutorily protected conduct," (2) he "suffered an adverse employment action," and (3) "a causal connection exists between the two." *Batson*, 897 F.3d at 1329.  An employee engages in protected activity under the

12

FMLA, if he requests time off, or otherwise provides notice to his employer of his need to take time off, for a "serious health condition." *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1384 (11th Cir. 2005). The adverse employment action must be material, meaning it must be one that "could well dissuade a reasonable worker" from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Wood asserts that he twice engaged in statutorily protected conduct: first when he sought leave for his ankle injury and later when he sought leave for his knee injury. We cannot say that he engaged in a statutorily protected activity when he requested time off for his knee injury because, as we discussed above, his knee injury was not a serious health condition. *See Cruz*, 428 F.3d at 1384. We assume that Wood engaged in a statutorily protected activity when he requested leave for his ankle.

Wood nevertheless failed to establish a prima case of retaliation because he cannot establish a causal connection between his protected activity—requesting leave for his ankle injury—and the material adverse employment action—his termination several months later. After Wood injured his ankle, Gilman permitted Wood to take leave and allowed him to return to his same position at the mill. Given the nearly seven-month gap between Wood returning to work and his termination, in the absence of other evidence we cannot say that a reasonable jury

13

could find a causal connection between Wood's protected conduct (his FMLA leave) and the adverse employment action (his termination). *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (affirming grant of summary judgment to employer in the absence of other evidence when adverse employment action occurred approximately three months after the employee's protected activity).

Wood argues that a sufficient causal connection exists because he suffered a separate adverse employment action shortly after returning to work—when Gilman extended the period of time in which it was monitoring his attendance. When Wood accrued a second occasion, Gilman monitored his attendance over a new six-month period. During this monitoring period, Wood injured his ankle and took FMLA leave. When Wood returned from leave, Gilman extended the monitoring period by the amount of time that Wood had missed work. During the extended period, Wood accrued his third occasion. We cannot say that the extension of the monitoring period rises to the level of an adverse employment action because it would not dissuade a reasonable worker from engaging in activities protected under the FMLA. *See Burlington*, 548 U.S. at 68. Indeed, Wood requested more time off after Gilman notified him of the extension.

14

Because Wood failed to establish a prima facie case of retaliation, the district court properly granted summary judgment to Gilman on the FMLA retaliation claim.[4]

## IV.  CONCLUSION

For the reasons set forth above, we affirm the district court's order granting summary judgment to Gilman.

**AFFIRMED.**

---

[4] Wood argues that even if he cannot satisfy the *McDonnell Douglas* burden shifting framework, he came forward with evidence sufficient to establish a convincing mosaic that Gilman had a retaliatory motive.  But we will not consider this argument that Wood raised only in his reply brief, and not his initial brief, to our Court.  *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008).