United States Court of Appeals,

Eleventh Circuit.

No. 96-9490.

Queen Ester GAY, Plaintiff-Appellant,

v.

GILMAN PAPER COMPANY, d.b.a. Gilman Converted Products, Defendant-Appellee.

Oct. 29, 1997.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV-395-19),
Dudley Bowen, Judge.

Before COX and BARKETT, Circuit Judges, and HUNT*, District Judge.

BARKETT, Circuit Judge:

Queen Ester Gay appeals from the district court's order granting defendant Gilman Paper

Company's ("Gilman") motion for summary judgment as to her claims under the Family and Medical

Leave Act ("FMLA"). The district court based its grant of summary judgment on Gay's failure to

offer any evidence from which a jury could conclude either that she gave Gilman sufficient notice

of her need for leave under the FMLA or that Gilman's asserted reason for terminating her was a

pretext for discrimination. We affirm the grant of summary judgment.

BACKGROUND

Appellant, Queen Ester Gay, was employed by the Gilman Paper Company from 1988 until

her termination on June 28, 1994.[1] Between January 1992 and February 1994, Gay was disciplined

on five separate occasions for tardiness and/or absenteeism. Gay last worked at Gilman on June 18,

1994 and was scheduled to return to work four days later on June 22. On June 20, however, Gay

was admitted to the Houston County Medical Center, a psychiatric hospital, to receive treatment for

a nervous breakdown. On June 22, Gay's husband called Gay's supervisor, Polly McKendree,

---

*Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia,
sitting by designation.

[1]On appeal, Gilman asserts that Gay was terminated on June 29, 1994, while Gay contends
that her discharge occurred on June 28. Because the district court found that Gay was terminated
on June 28, that date will be used throughout this opinion.

informing McKendree that Gay was in the hospital. Mr. Gay did not inform McKendree that his wife had suffered a nervous breakdown, but instead told her that Gay was having some tests run. During his deposition, Mr. Gay subsequently admitted that he had lied to McKendree about Gay's whereabouts and condition. He also admitted that he had instructed his sons not to give Gilman any information regarding Gay's condition or location. Specifically, Mr. Gay testified:

Q. What do you recall telling her [McKendree]?

A. I told her Queen was in the hospital.

Q. Did she ask you where?

A. Yes.

Q. What did you tell her?

A. I probably told her Atlanta, I think, or somewhere. I didn't tell her where she was at.

Q. Did you lie to her?

A. Yes.

Q. Why did you lie to her?

A. 'Cause I just didn't want them [Gilman] to know—I didn't want them to know her condition.

Q. So you lied to them both about the location and the condition, didn't you?

A. Yes.

Q. Did she ask when your wife would be back?

A. She asked what—she asked me what was wrong, but I didn't answer the question. I think she asked—hope she—told me she hoped she'd be okay but I wouldn't give her any information or anything 'cause I ain't willing—I didn't think they needed to know.

Q. Did you tell her she was having some tests run?

A. I probably did.

Q. Do you know whether or not Polly called your home and talked to one of your boys?

A. I don't know.

Q. You don't know whether she talked to Darren?

A. No, I don't know. She may have. She may have. The kids may have told me someone called. I don't know.

2

Q. Did you tell the boys if Gilman called not to tell them where—

A. Yeah.

Q. —she was?

A. Right.

Q. You told them that?

A. Uh-huh. (Affirmative)

Q. Told them if the company called, lie to them about where she was?

A. Just don't give them any information.

Q. And Dan never told you he talked to Polly McKendree?

A. I can't remember.  He might have told me that she called and I asked him did you tell them anything and he said no 'cause I told them not to tell them anything, where she at or what. Just tell them she's in the hospital and that's it.

Gay made no further effort to communicate with Gilman regarding her condition or absence from work during the following week.  On June 28, Gay was terminated by letter for "extended failure to report off, or explain absences."

Gay subsequently filed suit in the United States District Court for the Southern District of Georgia, alleging that she had been improperly denied leave for a serious health condition under the FMLA and wrongfully terminated for exercising her rights under the FMLA.[2]

DISCUSSION

We review the district court's grant of summary judgment *de novo,* applying the same legal standards that bound the district court, and viewing all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party. *Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995); *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1557 (11th Cir.1992).  Summary

---

[2]Gay's complaint also asserted claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Georgia tort law.  Gay's ADA and Title VII claims were dismissed by prior court order and are not the subject of this appeal.  In addition, Gay does not appeal the district court's grant of summary judgment as to her state tort law claim.

judgment is appropriate only when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The FMLA provides eligible employees with "a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition[3] that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Where such leave is foreseeable based on planned medical treatment, the Act requires the employee to "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph." 29 U.S.C. § 2612(e)(2)(B). Although the Act itself is silent regarding the notice required in the case of unforeseeable leave, interim regulations[4] promulgated by the Department of Labor provide that

> [w]hen the need for leave, or its approximate timing, is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary cases.

29 C.F.R. § 825.303(a) (1993). The interim regulations further provide that the required notice may be given by telephone and that

> [n]otice may be given by the employee's representative (e.g., a spouse ... ) if the employee is unable to do so personally. The employer will be expected to obtain any additional required information through informal means. The employee or representative will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303(b) (1993). Additional FMLA implementing regulations provide that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as

---

[3]The parties do not dispute that Gay was suffering from a "serious health condition" within the meaning of the FMLA, which provides "[t]he term "serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

[4]The Department of Labor released final regulations implementing the FMLA effective April 6, 1995. *See* 60 Fed.Reg. 2180 (1995). Because Gay's serious health condition and subsequent termination from employment occurred in June 1994, however, the interim regulations govern this dispute.

4

FMLA-qualifying, based on information provided by the employee." 29 C.F.R. § 825.208(a)(2) (1993).

Gay argues that her husband's assertion that she was in the hospital for tests was sufficient to put Gilman on notice that her condition was potentially FMLA-qualifying, thus shifting the burden to Gilman to make further inquiry as to whether her absence in fact qualified for treatment under the FMLA. She also suggests that it was then Gilman's responsibility to avail itself of the means by which employers may obtain information verifying an employee's need for FMLA leave, such as asking Gay to furnish a detailed medical certification from her health care provider. *See* 29 U.S.C. § 2613; 29 C.F.R. §§ 825.305, 825.306 (1993). Finally, Gay argues that nothing in the FMLA or its corresponding regulations requires that an employer be given specific information about an eligible employee's "true condition or location."

In support, Gay relies primarily on two cases, which we find inapposite to Gay's situation and which, indeed, support the opposite result. First, Gay directs us to *Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028 (M.D.Tenn.1995). In that case, the plaintiff had stayed home from work for two days to care for her three-year-old daughter, who was suffering from a serious health condition within the meaning of the FMLA.[5] *See id.* at 1032-33. On both of the days of her absence, the plaintiff had called her employer and notified the Human Resources Manager that she would be absent from work because of her daughter's illness. *See id.* at 1033. In addition, the plaintiff's husband had delivered to her supervisor a note from their daughter's physician explaining the plaintiff's absence. *See id.* Observing that the FMLA implementing regulations "make clear that an employee must tell her employer the reason she is absent from work before she will be entitled to FMLA protection," *id.* at 1038, the court found that, under the circumstances of that case, "[t]he plaintiff gave sufficient notice that her absence was necessitated by an FMLA-qualifying reason,"

---

[5]The FMLA permits an eligible employee to take leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

5

*id.* at 1039.  The court further held that once such notice was given, "it was the employer's duty to make further inquiry to determine if the leave qualified for FMLA protection."  *Id.* at 1038.

In *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758 (5th Cir.1995), the appellant, who had been disciplined repeatedly by her employer for poor attendance, was absent from work for over a month due to complications that developed following what was anticipated to be minor surgery on her toe, *see id.* at 760.  The appellant had received permission to be absent from work on the day of the surgery and, when complications subsequently developed, she immediately notified her supervisor that she could not return to work due to these complications.  She kept in constant contact with her employer throughout her absence, though she neither referred to nor attempted to refer to the FMLA when requesting leave.  *See id.*  Reversing the district court's grant of summary judgment in favor of the employer, the Fifth Circuit held that an eligible employee may avail herself of the FMLA's protection without expressly invoking the statute when notifying her employer of her need for leave occasioned by a serious health condition.  *See id.* at 764.  Although the court specifically declined to announce any "categorical rules" concerning the content of an employee's adequate notice beyond holding that the employee need not specifically mention the FMLA, the court suggested that, in determining whether an employee's notice was sufficient, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."  *Id.*

Consistent with the cases Gay cites is *Price v. City of Fort Wayne,* 117 F.3d 1022 (7th Cir.1997), in which the appellant had sought leave from work due to an assemblage of medical problems, no one of which alone rose to the level of a serious health condition, *see id.* at 1024-25.  In requesting leave, the appellant had filled out the form provided by her employer, indicating that the reason for her request was medical need, and had attached a note from her doctor, from whom she had sought treatment for her various health problems eight times in a two month period preceding her request, requiring her to take time off.  *See id.* at 1025.  Observing that the notice required by the FMLA is given "when the employee requests leave for a covered reason," the court

6

found that, under the circumstances, the appellant had provided her employer with "sufficient information to put [the employer] on notice that this was a possible FMLA leave situation." *Id.* at 1026.

In each of these cases the employee adequately conveyed to the employer sufficient information to put the employer on notice that her absence was potentially FMLA-qualifying. Conversely, in this case, not only was there a dearth of information provided, but the information that was provided was false. Gay's husband informed her supervisor that Gay was having some tests run on the first day of her absence from work. When questioned by Gay's supervisor about his wife's condition, Gay's husband deliberately withheld information concerning the true nature of her condition and instructed his sons to do the same. Under these circumstances, the burden to request further information never shifted to Gilman because Gilman could not reasonably be expected to conclude that Gay's absence might have qualified for treatment under the FMLA.

The FMLA's notice requirements serve to assist employers in accommodating their employees' absences for certain medical or family reasons. *See Manuel,* 66 F.3d at 762. Of course, unforseen medical emergencies may make advance notice impossible, and in that case, no rights under the FMLA would be lost. At the same time, an employer is entitled to expect that the employee will be cognizant of her own job responsibilities as well as the operations of the employer and will give notice as soon as practicable. When notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA.

We agree with the decisions cited above that, where an employee's need for FMLA leave is unforeseeable, the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason. However, we

7

cannot agree that, under the circumstances presented here, Gay provided Gilman with that kind of notice.[6]

AFFIRMED.

---

[6]We have considered Gay's argument that, even if the notice she provided was insufficient, Gilman should be estopped from challenging the sufficiency of her notice because Gilman failed to comply with the mandatory written guidance and notice provisions of the FMLA. We find that argument inapplicable in the circumstances presented by this case, however, as the notice provisions Gay cites do not address the notice required in the case of an employee's unforeseeable need for FMLA leave. We also find no merit in Gay's argument that Gilman's asserted reason for terminating her was a pretext for discrimination.