[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 06-11970
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 17, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-02160-CV-WBH-1

JAMES B. PRUITT,
KENNETH SMITH.

Plaintiffs-Appellants,

versus

BELLSOUTH,
NOEL CAGLE,

Defendants-Appellees.

----------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
----------------------------------------

**(November 17, 2006)**

Before EDMONDSON, Chief Judge, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants James Pruitt and Kenneth Smith (collectively the

"Plaintiffs"), African-American former employees of BellSouth

Telecommunications, Inc. ("BellSouth"), appeal the district court's grant of summary judgment to BellSouth and Plaintiffs' former supervisor, Noel Cagle, on their claims of race-based disparate treatment in violation of Title VII, 42 U.S.C. § 2000e et seq.[1] No reversible error has been shown; we affirm.

We review the district court's rulings on a motion for summary judgment de novo; we view all evidence and factual inferences in the light most favorable to the non-moving party. Gay v. Gilman Paper Co., 125 F.3d 1432, 1434 (11th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Plaintiffs allege that BellSouth engaged in unlawful discrimination by terminating them after Plaintiffs incurred high cellular phone charges with their

---

[1]On appeal, Pruitt and Smith do not challenge the district court's grant of summary judgment to Cagle on the basis that a plaintiff properly cannot assert a Title VII claim against an individual employee; therefore, Plaintiffs' Title VII claim against Cagle is abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

BellSouth-issued phones even though white employees -- who also were supervised by Cagle and had high cell phone bills -- were not terminated.[2]

In considering disparate treatment claims supported by circumstantial evidence, "the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). To make out a prima face case, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified to do his job; (3) he was subjected to an adverse employment act; and (4) his employer treated similarly-situated employees outside his class more favorably. Maynard v. Bd. of Regents of Univs. of Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Here, the only issue in determining whether Plaintiffs established a prima facie case is whether BellSouth treated similarly-situated employees outside of Plaintiffs' protected class more favorably. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees

_____

[2]After the first occurrence of Plaintiffs' high cell phone bills, BellSouth issued in-lieu-of-suspension letters to them and warned them that continued misuse of their cell phone would result in their termination. After the second occurrence of Plaintiffs having high cell phone bills, they were terminated.

3

are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562.

In this case, it is undisputed that Pruitt incurred cell phone charges of $415.11 in August 2002 and $443.92 in May 2003; and Smith incurred cell phone charges of $365.97 in August 2002 and $163.30 in May 2003. BellSouth presented evidence that, from June 2002 to May 2003, the monthly cell phone bill for employees supervised by Cagle typically did not exceed $60. When Cagle issued cell phones to the employees whom he supervised, including Plaintiffs, Cagle informed them that their cell phones should be used only for company business but could be used for personal calls in the event of an emergency, such as an automobile accident or if someone required immediate medical attention. In addition, Plaintiffs signed an agreement that stated they were issued a cell phone "for company use" and that they were responsible for using the cell phones in a "business-like manner."

Although Plaintiffs both acknowledged that they made personal calls with their BellSouth-issued cell phones, they argue that white employees who were supervised by Cagle and who made personal calls with their BellSouth-issued cell phones were treated more favorably. But the record shows that these employees were not similarly situated to Plaintiffs -- either because they did not incur cell

4

phone charges as high as Plaintiffs' charges or because their high cell phone charges were not significantly attributable to personal calls. For instance, Plaintiffs point to BellSouth employee Keith Brumbelow; but Brumbelow's high cell phone bill resulted from his cell phone number inadvertently being published in an advertisement, resulting in him taking many calls in response to the advertisement. And Brumbelow also informed Cagle about these calls before Cagle received the bill for Brumbelow's cell phone.

Plaintiffs also argue that BellSouth employee Matthew Bell had a high cell phone bill and was not disciplined as a result of his phone usage. But the record shows that Bell's high cell phone bill was because Bell served as the "anchor line" for a group of BellSouth-issued cell phones. As a result of this position, the account for Bell's cell phone number was charged up to $225 each month. And Plaintiffs' reliance on BellSouth employees Shannon Shoemaker and David Crumbly also fails to demonstrate that they were similarly-situated employees who were treated more favorably than Plaintiffs. Although Shoemaker and Crumbly incurred cell phone charges greater than the average of $60, their highest cell phone bill was $125.25, which was incurred by Shoemaker and for which she received a warning from BellSouth. Plaintiffs each had a cell phone bill that was more than double the highest bill incurred by either Shoemaker or Crumbly. And

5

Plaintiffs do not point us to evidence in the record that Shoemaker or Crumbly used their cell phones for personal calls. Therefore, because Plaintiffs have not shown that BellSouth treated similarly-situated persons outside Plaintiffs' protected class more favorably, we agree with the district court that Plaintiffs failed to satisfy all elements of their prima facie case.

More important, even assuming that Plaintiffs established a prima facie case of discrimination, they have not shown that BellSouth's reason for their termination -- misuse of company-issued cell phones -- was a pretext for discrimination. See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that, if plaintiff establishes a prima facie case of discrimination, employer has burden of presenting a legitimate, nondiscriminatory reason for its employment decision, which plaintiff then may rebut as pretext for discrimination). The district court's grant of summary judgment to BellSouth was appropriate.

AFFIRMED.