[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 06-12253
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 30, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-00627-CV-W-N

GLORIA JEAN BELL,

Plaintiff-Appellant,

versus

CAPITAL VENEER WORKS,

Defendant-Appellee.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
----------------------------------------------------------------

**(January 30, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Gloria Jean Bell, an African-American female over the

age of 40 who was employed by Capital Veneer Works, Inc. ("Capital Veneer"),

appeals pro se the district court's grant of summary judgment to Capital Veneer on her claims of race and sex discrimination, in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e et seq., and her claim of age-based discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA"). No reversible error has been shown; we affirm.

We review the district court's rulings on a motion for summary judgment de novo; we view all evidence and factual inferences in the light most favorable to the non-moving party. Gay v. Gilman Paper Co., 125 F.3d 1432, 1434 (11th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

We first consider Bell's Title VII and section 1981 claims. In considering disparate treatment claims supported by circumstantial evidence, "the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally."[1] Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). To make a prima face

---

[1] We review claims under Title VII and section 1981 "under the same analytical framework" because these claims "have the same requirements of proof." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

case, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to do her job; (3) she was subjected to an adverse employment act; and (4) her employer treated similarly-situated employees outside her protected class more favorably. Id. at 1091. Here, the only issue in determining whether Bell established a prima facie case is whether Capital Veneer treated similarly-situated employees outside of Bell's protected class more favorably. "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Id.

In this case, Capital Veneer terminated Bell in July 2003, when the company closed its "plant-three" where Bell worked. Bell alleged that five employees worked at plant-three in July 2003: herself, Myrtle Brooks, Melinda Hendricks, an unnamed Hispanic female under the age of 40, and an unnamed Hispanic male under 40.[2] Capital Veneer asserted that the five plant-three employees at that time were (1) Bell, (2) Brooks, an African-American female over 40, (3) Hendricks, an African-American female under 40, (4) Liboria Camano, a Hispanic female under 40, and (5) Adam Lipscomb, an African-American male over 40. After plant-three

_____

[2] Bell provided this list of July 2003 plant-three employees in her declaration, which was attached to her response to Capital Veneer's motion for summary judgment. But in her complaint, Bell asserted that only four employees -- (1) herself, (2) an African-American female over 40, (3) an African-American male under 40, and (4) a "Mexican national" female under 40 -- worked at plant-three in July 2003.

3

was shut down, Bell and Brooks were terminated; and Camano and Lipscomb returned to work at Capital Veneer's other plants.[3]  Plant-three reopened several months later.[4]

Bell acknowledged that, although she occasionally worked at Capital Veneer's other plants, she chiefly worked at plant-three.  Bell has pointed to no evidence that her comparators -- who were not terminated after the July 2003 plant-three closure -- also chiefly worked at plant-three, as she did.  Jason Adams, Bell's supervisor, stated in a sworn deposition that Lipscomb was a "floater" who "could fill-in for most positions in any of the three [Capital Veneer] plants" and that Camano "was hired to operate the brick slat saw in plant [one], but assisted in plant [three] as customer orders warranted the need for additional help."  Although Bell denied that Lipscomb worked in plant-three and, instead, asserted that a Hispanic male worked there when the July 2003 plant closing occurred, she did not identify this Hispanic employee; nor did she assert whether this employee had

---

[3]Hendricks had been arrested on a murder charge a few days before plant-three closed in July 2003; and Capital Veneer terminated her for job abandonment.

[4]Bell asserts that the district court erred in failing to address (1) Capital Veneer's refusal to recall her to work after plant-three reopened and (2) the company's hiring of several "Mexican nationals" to work in the reopened plant.  But the district court did address this claim, explaining that Bell had testified that she never contacted Capital Veneer about being rehired after plant-three reopened.  To the extent that Bell argues that Capital Veneer discriminated against her for not rehiring her, this argument is meritless.

chiefly worked in plant-three before it closed or if he assumed another position with Capital Veneer after July 2003 when plant-three closed. Therefore, Bell has not shown that she was similarly situated to Camano or the other male employee working at plant-three; and we agree with the district court that Bell has failed to satisfy all elements of her prima facie case.

More important, even assuming that Bell established a prima facie case of discrimination, she has not shown that Capital Veneer's reason for her termination -- the closure of plant-three, where Bell was assigned to work -- was a pretext for discrimination.[5] See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that, if plaintiff establishes a prima facie case of discrimination, employer has burden of presenting a legitimate, nondiscriminatory reason for its employment decision, which plaintiff then may rebut as pretext for

---

[5]Bell contends that the district court failed to consider adequately the sworn statement of Bell's former co-worker, Myrtle Brooks, that "sometime before Adams terminated [Brooks], . . . he said something to the effect [of] '[i]f I could run the mill myself, I would fire everyone [sic] of these niggers." Bell has not asserted that Adams's statement is direct evidence of discrimination. And even construing the facts in Bell's favor, as we must, Bell has not demonstrated that Capital Veneer's reason for her own termination was pretexual. See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227, 1229 (11th Cir. 2002) ("Although a comment [that "[w]e'll burn his black ass"] unrelated to a termination decision may contribute to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext.") (internal citation omitted). As we have discussed, Bell failed to satisfy the elements of her prima facie case; and it is unclear if Adams's alleged comment was made around the time of Bell's termination. Therefore, without other evidence supporting the conclusion that Capital Veneer's reason for terminating Bell was pretextual, we do not believe that Brooks's statement about the comment made by Adams defeats the grant of summary judgment to Capital Veneer.

discrimination). The district court's grant of summary judgment to Capital Veneer on Bell's claims of race and gender discrimination was appropriate.[6]

We turn to Bell's ADEA claim. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA limits its protections to persons who are 40 or older. 29 U.S.C. § 631(a). Where a position is eliminated in its entirety, a plaintiff establishes a prima facie case of age discrimination by demonstrating these things:

> (1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision.

Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1344 (11th Cir. 2003). Bell asserts that she satisfied her prima facie case of age discrimination.

---

[6]In her brief on appeal, Bell also suggests that she was entitled to a mixed-motive jury instruction under the Supreme Court's decision in Desert Palace, Inc. v. Costa, 123 S.Ct. 2148 (2003), because "all [she] had to do was to show that her race or sex was a motivating factor for Capital Veneer's decision [to terminate her], even though other factors also motivated [Capital Veneer]." Because Bell has not alleged facts that would entitle her to a mixed-motive instruction, we reject this contention as without merit.

Even if we assume that Bell satisfied the first two elements of the prima facie case, Bell has not presented evidence that demonstrates Capital Veneer intended to discriminate against her on the basis of her age. Lipscomb, who remained working for Capital Veneer after the closure of plant-three, was over 40 years old. Although Camano was under 40 years old, she -- unlike Bell -- did not work chiefly in plant-three; and Camano returned to her position in another plant. Bell has not presented evidence about the employment status of the unnamed Hispanic male that she claims worked in plant-three in July 2003. And she has not demonstrated that an open position for which she was qualified existed in another Capital Veneer plant when plant-three closed or that she pursued another position. Therefore, she has not produced evidence that Capital Veneer intended to discriminate against her because of her age.[7] We affirm the grant of summary judgment to Capital Veneer on Bell's ADEA claim.

AFFIRMED.

---

[7]Even if we reviewed Bell's age discrimination claim under the prima facie case used for her race and sex discrimination claims, Bell still has not satisfied her burden of establishing a prima facie case because, for the reasons discussed, she has not demonstrated that Capital Veneer treated a similarly-situated employee who was younger than 40 years old more favorably than the company treated her.