[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14972
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 1, 2012
JOHN LEY
CLERK

D.C. Docket No. 0:08-cv-60648-JAL

LYNN YUK CHUN WAI,

Plaintiff - Appellee,

versus

FEDERAL EXPRESS CORPORATION,
FEDEX CUSTOMER INFORMATION SERVICES, INC.,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 1, 2012)

Before DUBINA, Chief Judge, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

Federal Express Corporation ("FEC") and FedEx Customer Information Services, Inc., ("FCIS") (collectively "FedEx") appeal the district court's denial of their motion for a new trial and renewed motion for judgment as a matter of law after a jury verdict in favor of Lynn Yuk Chun Wai ("Wai") in an action brought pursuant to the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. FedEx raises three issues on appeal. First, FedEx argues that there was insufficient evidence for the jury to reasonably conclude that Wai provided adequate notice to alert FedEx that she had a potential FMLA-qualifying event. Second, FedEx argues that the district court erred in upholding the jury's $225,000 damages award because the award is not supported by the law and is against the clear weight of the evidence. Finally, FedEx argues that the district court erred in including front pay in its award of liquidated damages. For the reasons set forth below, we affirm in part and reverse in part.

## I.

Wai was employed by FexEx as a customer service representative from February 1996 until July 2006. In May and June of 2006, Wai attended four medical appointments to determine whether a nodule on her thyroid and certain suspicious masses were cancerous. Subsequently, on July 19, 2006, FedEx terminated Wai from her employment, after she had received her third disciplinary

2

letter within a twelve-month period.[1]

At trial, Wai's supervisor, Urvashi Purohit ("Purohit") testified to FedEx's policy regarding family medical leave and her knowledge of Wai's medical concerns. Purohit testified that it was FedEx's policy to give an employee paperwork to complete when requesting family medical leave, and that FedEx had not given Wai the appropriate paperwork following Wai's medical appointments. As to Purohit's knowledge of Wai's medical issues, she testified that Wai had inquired about whether her appointments fell under the FMLA, that she knew Wai was going to an appointment because of a thyroid problem, and that she learned that Wai had certain suspicious lumps because Wai notified her of an appointment with a surgeon. Additionally, Purohit acknowledged that, in a May 10, 2006 email, the point person for the FMLA stated that Wai's appointments were "not yet an FMLA issue." Therefore, Purohit had advised Wai that she should obtain forms from another manager for "preapproved preauthorized premedical leave," a type of leave used for surgeries not covered under the FMLA.

Furthermore, Wai herself testified at trial to Purohit's knowledge of her

---

[1] Under FedEx's policies, all employees are required to maintain an attendance level of 96.9 percent or higher, and an employee is terminated if she receives three warning letters or performance reminders within a rolling twelve-month period. In the process of terminating Wai, FedEx calculated Wai's attendance percentage at 96.7 percent, which included the four medical visits.

medical problems and the reason she did not complete the FMLA forms. Wai testified that she was open with Purohit and told her about her ongoing medical concerns and any medical appointments that she was trying to schedule. She also testified that she had asked Purohit whether her medical problems were covered under the FMLA, and that Purohit had informed her that the absences were not covered. Nevertheless, Wai testified that she continued to seek medical attention because she was concerned that she had cancer.

Wai also testified to the damages she suffered as a result of her termination. First, she testified to her medical and retirement benefits while working at FedEx. Her benefits with FedEx included a medical plan with vision, dental, and prescription coverage. She recalled that this plan was covered by a premium of $30 per week that was deducted from her paycheck. As to her retirement benefits, she testified that she had a 401(k) and retirement plan at FedEx; was 47 years old; and would have been eligible for (1) a pension after retirement at age 55 or age 60, and (2) an extension of her medical benefits until Medicare coverage began. Next, she testified to the difference between her income at FedEx and her income thereafter. During her employment with FedEx, she earned $36,265 per year, plus benefits. Following her termination in July 2006 from FedEx, she found a job as a vacation planner for Carnival Cruise Lines ("Carnival") in August or September of

2006. Wai testified that her Carnival base salary was between $11,000 and $13,000 per year. Wai's income tax return for 2006 showed total income of $16,171 for that year. Of that amount, $8,583.23 is attributable to a W-2 from FCIS.[2]

However, Wai testified that she left Carnival in January 2007 due to a long commute and the low pay. She subsequently took a job as a restaurant waitress. There, she made $27,000 per year and paid about $44 per week in premiums for a health insurance plan. She did not have a retirement plan while working as a waitress.

Before the close of evidence, both parties moved for relief. FedEx orally moved for judgment as a matter of law, arguing, in part, that no proper notice was given to FedEx that Wai's condition warranted FMLA leave, and that Wai had not met her burden to show that she was entitled to FMLA leave. Wai also moved orally for judgment as a matter of law, arguing, in part, that FedEx knew Wai was going to see a surgeon, and therefore FedEx had knowledge sufficient to place it on notice of a potential FMLA issue. The district court denied both motions. As

---

[2] FedEx contends that, because Wai's income tax return for 2006 showed total income for that year of $16,171, and $8,583.23 is attributable to a W-2 from FCIS, the remaining income is attributable to Carnival. However, the evidence showed that, in 2006, Wai's employer changed from FedEx to FCIS and that Wai's total 2006 earnings would have also included earnings from FedEx.

to the issue of notice, the court found that there was sufficient evidence for it to be a proper question for the jury. The court also found that the issue of Wai's eligibility for FMLA leave was a proper factual issue for the jury.

At the close of evidence, both parties renewed their motions for judgment as a matter of law, and the court denied the same. In instructing the jury as to damages, the court stated that, if the jury were to find lost pay or benefits by a preponderance of the evidence, then Wai could recover damages for the net pay or benefits lost between the time of her termination and the date of the verdict.

The jury found in favor of Wai. Specifically, it found that Wai had proved by a preponderance of the evidence that she was entitled to FMLA leave; gave proper notice to FedEx of the need to be absent from work; and that she was terminated because she took FMLA leave. The jury awarded Wai $225,000 in damages against FedEx, without differentiating how it had calculated those damages. The court entered judgment in favor of Wai in the amount of $225,000, and noted that Wai reserved the right to seek attorney's fees and other costs.

Wai thereafter moved to amend the judgment to include prejudgment interest and liquidated damages. Wai argued she was entitled to liquidated damages because FedEx did not conduct a good-faith investigation of her potential eligibility for FMLA leave. She requested liquidated damages in the amount of

6

$236,030.36, based on a sum of actual damages of $225,000 and the prejudgment interest of $11,030.36. FedEx responded that it had a reasonable basis for denying Wai FMLA leave and did so in good faith. FedEx, however, did not object to the calculation of prejudgment interest. The court awarded Wai prejudgment interest in the amount of $11,030.06, and awarded liquidated damages in the amount of her $225,000 jury award plus prejudgment interest, totaling $236,030.36.

FedEx moved for a new trial or to amend the judgment, or in the alternative, for remittitur. FedEx argued that the jury's award of $225,000 was grossly excessive, and that the jury's finding that FedEx had received notice of Wai's need for FMLA leave was against the great weight of the evidence. The district court denied the motions, finding that Wai presented sufficient proof upon which a reasonable jury could find in her favor on the essential elements of her FMLA claims. This appeal ensued.

## II.

We review de novo a district court's denial of a motion for judgment as a matter of law. Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1210 (11th Cir. 2010) (citation omitted). We review all evidence in the record and draw all reasonable inferences in favor of the non-moving party. Id. at 1211 (citation omitted). We review the district court's denial of a motion for a new trial and the

denial of a motion for remittitur for abuse of discretion. Lambert v. Fulton Cnty., Ga., 253 F.3d 588, 595 (11th Cir. 2001) (citing McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990)); Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010) (citation omitted) (stating that a district court's denial of a motion for remittitur is reviewed for a clear abuse of discretion). Similarly, we review the district court's decision to award liquidated damages for abuse of discretion. Cooper v. Fulton Cnty., Ga., 458 F.3d 1282, 1287-88 (11th Cir. 2006).

## III.

The FMLA provides eligible employees the right to take up to 12 work weeks of unpaid leave per year for any one or more of several reasons. One of those reasons is relevant here: "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA further protects the employee's right to be reinstated to their former position or to an equivalent position upon return from leave. 29 U.S.C. § 2614(a)(1)(A)-(B). The FMLA states that, when the necessity for leave is foreseeable, the employee "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave . . . ." 29 U.S.C. § 2612(e)(2)(B).

To protect an employee's rights, the FMLA created two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) (internal citations omitted). To establish an interference claim, "an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." Martin v. Brevard Cnty. Pub. Sch., 543 F.3d 1261, 1266-67 (11th Cir. 2008) (citations omitted). On the contrary, to establish a retaliation claim, "an employee must show that his employer intentionally discriminated against him for exercising an FMLA right." Id. (citations omitted).

Wai alleged both of these claims in her complaint, but the verdict provided the jury only with the claim of retaliation. Under a heading entitled "Retaliation," the verdict form stated two questions, both of which went solely to that claim: (1) "Has Ms. Wai proven that her employment was terminated because of a request for FMLA leave?"; and (2) "Has Ms. Wai proven that her employment was terminated because she took FMLA leave?" (R.3 at 100). Neither question was directed towards Wai's interference claim, and therefore we consider that issue mooted.

9

However, the jury did find that Wai was terminated because she took FMLA leave. FedEx does not now contest the jury's finding regarding retaliation. Instead, FedEx contests only its notice under the FMLA and Wai's subsequent damages.

**IV.**

We first address FedEx's arguments relating to notice. FedEx argues that Wai did not provide notice of any FMLA-qualifying event because her statements were general in nature and she admitted that she did not recall specifics of what she told FedEx about her absences. FedEx further argues that, because Wai provided them notice from her physicians authorizing her to return to work without restrictions, it had no need to consider any FMLA-qualifying event.

In order to establish a violation of the FMLA, notice must be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." Cruz v. Publix Super Mkts. Inc., 428 F.3d 1379, 1383 (11th Cir. 2005) (citing 29 C.F.R. § 825.302(c)). The notice need not be in writing or refer specifically to the FMLA. See 29 C.F.R. § 825.302(b)-(c). From there, when the employee "gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA

10

protection." Cruz, 428 F.3d at 1383 (citing Strickland, 239 F.3d at 1209 (citing 29 C.F.R. § 825.303(b))).

The evidence in the record is clearly sufficient for the jury to have found that Wai presented FedEx with adequate notice of her potential qualification for FMLA leave. As previously stated, Purohit gave extensive testimony as to her knowledge of Wai's medical concerns and appointments. Purohit testified that Wai inquired about whether her appointments fell under the FMLA, that she knew Wai was going to an appointment because of a thyroid problem, and that she learned that Wai had certain suspicious lumps because Wai notified her of an appointment with a surgeon. Purohit also advised Wai that she should obtain forms from another manager for "preapproved preauthorized premedical leave," a type of leave used for surgeries not covered under the FMLA. Therefore, discussions about Wai's potential eligibility for FMLA leave were ongoing. Testimony by the senior human resources representative, Kimberly McBrayer, shows that it was Purohit's job as manager to give employees FMLA forms to complete under appropriate circumstances. Purohit never gave those forms to Wai, despite ample notice of Wai's potential need.

Furthermore, Wai testified to being "very open" with Purohit and to sharing specific details about certain medical procedures. She informed Purohit of any

11

diagnostic tests before scheduling them, and asked FedEx whether her appointments were covered under the FMLA, specifically asking, "Shouldn't I be able to go to the doctor and get these tests done and the mammogram done and the lab work done? Isn't all that covered under FMLA?" (R.5 at 94). Also included in evidence was an email from Wai to Purohit telling her that she had an appointment with a surgeon, to which Purohit responded in part by telling Wai to "focus on your health and recovery." (R.4 at 134). Moreover, Wai testified that Purohit saw her come to work after one particularly painful procedure, where Wai's body had swelled up, she was barely able to talk, and she had a large bandage on her neck. Nonetheless, Wai was never given FMLA forms to complete and was instead told that her appointments were not covered. Any of the above examples are indicators that an individual is going through serious medical procedures that would, at the very least, warrant further inquiry as to whether FMLA leave is available.

In support of their argument to the contrary, FedEx cites to Gay v. Gilman Paper Co., 125 F.3d 1432 (11th Cir. 1997). In Gay, the employee was hospitalized for a nervous breakdown, but the employee's husband told the employer that she was having "some tests run." 125 F.3d at 1433. The Gay Court deemed that to be insufficient notice to trigger the employer's burden to request further information.

Id. Similarly, in Cruz the plaintiff told her employer that she required leave because her daughter was in labor and needed her help because her daughter's husband had broken his collar bone. 428 F.3d at 1381. There, we held that the employee's notice was insufficient to shift the burden to the employer to request further information. Id at 1380.

Unlike the above-cited cases, however, the evidence presented here was sufficient to put FedEx on notice. Unlike the plaintiffs in Cruz and Gay, Wai did not withhold information from her employer. She was transparent with her supervisor about the medical tests being performed and her need to take time off for those tests. Nor did she try to mislead her employer as to the reasons why she needed to take time off or downplay her circumstances. She was open and forthright and provided her employers with as much information as she had available to her on the procedures she was enduring, which made her fully compliant with FMLA notice requirements. Finally, despite the fact that Wai was not required to reference specifically the FMLA to provide sufficient notice, she did so, which further supports the jury's finding that notice was adequately given. See 29 C.F.R §§ 825.302(c), 825.303(b).

FedEx's argument that neither Purohit nor FedEx's other supervisors were on notice as to the full details of Wai's conditions improperly construes the

13

evidence in a light favorable to FedEx, the moving party. Here, FedEx was on notice of Wai's potential eligibility and should have conducted a reasonable investigation into whether her appointments were eligible for FMLA coverage. FedEx's argument that Wai's doctors' notes refuted her eligibility for FMLA leave, and therefore satisfied its responsibility to investigate, is without merit. Wai kept her supervisors informed about her medical issues throughout the time they persisted. This notice, along with the notice of her many medical appointments, should have alerted FedEx that it needed to conduct further investigation into whether Wai was eligible for FMLA leave. Therefore, we affirm the jury verdict as to liability and affirm the district court's denial of FedEx's renewed motion for judgment as a matter of law.

## V.

We next address FedEx's arguments relating to damages. FedEx first argues that the $225,000 damage award is excessive because the award is contrary to law and against the clear weight of the evidence. Specifically, FedEx argues that the damage award is contrary to law because front pay is an equitable remedy for the court to award, and the jury instructions did not give the jury the authority to award front pay. FedEx also argues that the award is not supported by the evidence because (1) Wai did not testify to the value of the benefits on her lost

wages, and (2) Wai failed to establish she was entitled to back pay for past lost wages. Finally, FedEx argues that the district court erred in including front pay in its award of liquidated damages.

Wai responds, in part, that FedEx waived its argument that the court should have determined front pay by failing to make that argument before the district court. Wai further argues that FedEx waived its argument relating to liquidated damages because it only argued that liquidated damages should not be awarded when FedEx acted in "good faith."

1. Waiver

As an initial matter, FedEx preserved its argument that the jury was not permitted to award front pay. FedEx argued in its motion for a new trial or to amend the judgment that the jury was instructed to only award damages from the time of the adverse employment decision until the date of the verdict. This was sufficient to preserve the issue.[3]

---

[3] Although defense counsel failed to object during final argument to Wai's counsel's statements relating to front pay, the failure to object does not constitute a waiver here because the jury was required to follow the instructions on the law given by the trial judge. Ash v. Tyson Foods, Inc., 664 F.3d 883, -- (11th Cir. 2011) (stating that this Court presumes juries follow the instructions given to them). Further, the district court instructed the jury that what lawyers say in a case is not evidence, that they are to decide the facts on the evidence in the case, and that they are to follow the law as given to them by the court. The jury was required to follow these instructions. Id.

Further, FedEx preserved its argument that the district court improperly included front pay in its liquidated damages award. Soon after Wai's motion for liquidated damages, FedEx moved for a new trial. As stated above, FedEx argued the issue of front pay in that motion. Subsequently, FedEx responded to Wai's motion for liquidated damages. However, when FedEx responded to that motion, it had yet to receive a ruling from the district court on its motion for a new trial. Although FedEx only argued in its response to Wai's motion for liquidated damages that it had acted in good faith when denying Wai FMLA leave, it did not waive this issue due to the timing of the district court simultaneously ruling on FedEx's motion for a new trial and Wai's motion for liquidated damages. This was done in an Omnibus Order some nine months later. FedEx preserved the issue by continually raising it and there was no waiver.

2. Damages

Turning to the merits, the jury's award of $225,000 is not supported by the law or the evidence. Under the FMLA, any employer who interferes with an employee's protected rights under the Act is liable to the employee for "damages" and "equitable relief." 29 U.S.C. § 2617 (a)(1)(A)-(B). The FMLA divides these remedies into two subsections. Id. The first subsection allows "damages" for "wages, salary, employment benefits, or other compensation denied or lost . . . ."

16

29 U.S.C. § 2617(a)(1)(A)(i)(I). That subsection also covers non-wage monetary losses, interest, and liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(i)(II)-(A)(iii). The second subsection provides for "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).

An award of front pay is not included in the enumerated damages under the first subsection. 29 U.S.C. § 2617(a)(1)(A). Nonetheless, a court may award front pay as a form of equitable relief where reinstatement is not feasible.[4] U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 618-19 (11th Cir. 2000) (decided in the context of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)). Thus, an award of front pay "is derived solely from the statutory provision permitting the court to award 'such equitable relief as may be appropriate.'" Traxler v. Multnomah Cnty., 596 F.3d 1007, 1012 (9th Cir. 2010) (quoting 29 U.S.C. § 2617(a)(1)(B)).

Here, any award of damages by the jury relating to front pay was error because the jury instructions in this case explicitly limited the jury's authority to assessment of damages in the past (up to the date of the verdict). In instructing the jury, the district court stated that if the jury were to find lost pay or benefits by a

---

[4] Because of the relative dearth of case law in our circuit relevant to front pay as an alternative to reinstatement under the FMLA, we herein cite cases decided under other employment discrimination statutes relevant to the FMLA.

preponderance of the evidence, Wai could recover damages for the "net pay or benefits shown by the evidence to have been lost from the time of implementation of [FedEx's] employment decision which violated the FMLA until the date of [the] verdict." Such a limitation is unequivocally a reference to past lost wages and benefits. The jury's verdict, however, awarded front pay.[5] Accordingly, the jury's verdict of $225,000 in damages is contrary to the court's instructions and the law and must be vacated.

Furthermore, the jury's award of $225,000 is against the clear weight of the evidence. There are two constituent parts to a back pay award. 29 U.S.C. § 2617(a)(1)(A)(i)(I). The first is determined by the difference between the actual wages earned and the wages the individual would have earned but for the defendant's violation. Akouri v. Fla. Dep't of Transp., 408 F.3d 1338, 1343 (11th Cir. 2005) (citation omitted) (decided in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.). The second is the recovery of health-insurance coverage and other fringe benefits. Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1348 (11th Cir. 2000) (decided in the context of the Age

---

[5] We recognize that the jury did not differentiate the type of damages in its award. However, to justify the award, Wai concedes that the jury awarded front pay because the amount the jury awarded vastly exceeds the figures submitted into evidence based upon back pay alone.

Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Florida Civil Rights Act, Fla. Stat. Ch. 760).

As to the first part of the calculation, Wai testified that her earnings at FedEx from January to July 2006 were based upon an annual salary of $36,265, and that her earnings at Carnival from August 2006 to December 2006 were based on an annual salary of between $11,000 and $13,000. Wai's salary at FedEx led to a monthly payment of $3,022 per month, which the jury could have awarded to her for the July-to-August 2006 period that she was out of work. During the five months that Wai worked at Carnival, the jury could have concluded that she made $917 monthly based upon Wai's testimony that she made $11,000 annually.[6] Therefore, the damages amount for the five months at Carnival could have equaled $10,525.[7] Additionally, Wai testified that she worked at the restaurant for three-and-a-half years and earned $27,000 per year, which is $9,265 less per year than her prior salary at FedEx. The damages amount for the time she worked at the restaurant equals $32,428. Thus, the jury could have reasonably found that the evidence supported an award of damages in the form of past lost wages for

[6] We arrive at this number by dividing Wai's annual income of $11,000 by twelve months.

[7] We arrive at this number by subtracting the amount of money Wai made at Carnival for five months ($917 multiplied by 5) from the amount of money Wai would have earned at FedEx for five months ($3,022 multiplied by 5).

$45,975, the total of $3,022 (the month Wai was out of work), $10,525, and $32,428.[8]

As to the second part of any award for back pay, the evidence regarding fringe benefits was limited. Wai testified that she had a retirement and 401(k) plan at FedEx, as well as health insurance. However, Wai did not provide any testimony relating to the value of her retirement or 401(k) plans. Rather, she only testified that, when she withdrew funds from her 401(k) plan, $5,000 to $6,000 remained. Such testimony is insufficient for the jury to reasonably conclude the value of Wai's retirement and pension plans. Further, documents relating to Wai's pension calculation were not submitted into evidence at trial. Without a basis in evidence, any jury award for Wai's retirement or 401(k) benefits would be pure speculation and must fail.

Similarly, Wai also failed to provide any evidence of the value of her health insurance at FedEx. Instead, she only testified that her weekly premiums for health insurance at FedEx and the restaurant were $30 per week and $44 per week,

_____

[8] We note that Wai's counsel used these same figures and claimed that she was entitled to approximately $50,000 in past losses. Furthermore, we find that FedEx's argument that Wai was not entitled to back pay because she allegedly earned more income after her termination from FedEx is without merit. Wai testified to her income level after her termination from FedEx, and the jury was free to accept that testimony. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quotation omitted).

respectively. This amounts to a difference of $728 annually.[9] Because Wai worked at the restaurant for three-and-a-half years, she had to pay an additional $2,548 for health insurance. This amount is only a small percentage of her total recovery.[10]

Thus, in considering the totality of the evidence, there is no basis whatsoever for an award of $225,000. The evidence supporting past losses limited such to between $45,000 and $50,000.

3. Liquidated Damages

The FMLA deals with damages in specific sections. 29 U.S.C. § 2617(a)(1)(A)-(B). Section 2617 is broken into two subsections. Id. Subsection (A)(i)-(ii) deals with past losses and the interest thereon. 29 U.S.C. § 2617(a)(1)(A)(i)-(ii). Subsection (A)(iii) deals with liquidated damages equal to the sum of the amount described in clause (i) and (ii) in the event that the employer fails to establish good faith. 29 U.S.C. § 2617(a)(1)(A)(iii). Subsection (B) provides for equitable relief. Thus, it is clear that liquidated damage awards are to be based upon past losses and the interest on such an amount.

---

[9] This number results from the $14 difference over the course of 52 weeks in a year.

[10] A review of the record indicates that Wai also presented evidence that she sustained losses relating to her health and pension benefits because she had an outstanding health bill for $1,000 and had to pay a 35% tax when she withdrew funds from her 401(k) plan.

Consequently, it is clear that the district court erred in its approach to liquidated damages. While we affirm the finding that FedEx failed to prove to the satisfaction of the court that its violation was in good faith, there is no legal basis for the award of $236,030.36 as liquidated damages. As discussed earlier, past losses under the evidence presented could not exceed $45,000 to $50,000. The statute limits liquidated damages to the amount awarded for past losses and the interest thereon. 29 U.S.C. § 2617(a)(1)(A)(iii).

Thus, we must vacate the award of liquidated damages.

4. Equitable Relief

As noted above, in addition to damages, the FMLA provides for "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Under the FMLA, front pay is an equitable remedy. U.S. E.E.O.C., 213 F.3d at 618-19. However, before awarding front pay, the court must first consider whether reinstatement is viable. Id.; Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001) (holding, in the context of a Title VII case, that "[i]n cases in which reinstatement is not viable . . . courts have ordered front pay as a substitute for reinstatement"). Therefore, unless the court finds that reinstatement is impracticable, "we presume that reinstatement is the appropriate remedy." U.S. E.E.O.C., 213 F.3d at 619.

22

In determining whether reinstatement is feasible, the district court must consider factors such as the availability of the position and the impact reinstatement would have on the employee-employer relationship. Id. See also Traxler, 596 F.3d at 1012 (citation omitted). Circumstances for the court to consider when reviewing the employee-employer relationship include whether "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy, the defendant's management [had] intimidated or threatened the plaintiff, or the termination had harmed the plaintiff's emotional well-being." U.S. E.E.O.C., 213 F.3d at 619 (alteration in original) (internal citations and quotation marks omitted). Only after the court considers these factors may it award front pay in lieu of reinstatement. Additionally, the court must "carefully articulate its reasons for awarding front pay rather than reinstatement." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1339 (11th Cir. 1999) (decided in the context of the ADEA, 29 U.S.C. § 621 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.).

The record in this case is totally silent as to any consideration of reinstatement. Wai had requested such in her complaint when she sought "appropriate relief including reinstatement . . . ." (R.1 at 11). The Omnibus Order of the district court makes no reference to reinstatement in spite of our precedent

that such is the remedy that should be considered in the first instance. With the size of FedEx, and its worldwide operations, it is hard to image any impediments to reinstatement. At a minimum, the district court is required to consider the availability of Wai's former position or another similar position and the overall relationship between Wai and FedEx. See U.S. E.E.O.C, 213 F.3d at 619.

## VI.

For these reasons, we affirm the jury's finding of a violation of the FMLA and we affirm the court's finding that FedEx did not prove that the violation was made in good faith. We vacate all of the awards of damages by the jury and the district court and remand the matter for further proceedings consistent with this opinion.[11]

**AFFIRMED IN PART AND REVERSED IN PART.**

---

[11] We note the possibility that past losses could be handled by way of a proper remittitur, which was requested by FedEx. Any other appropriate relief is a matter for the district court as outlined herein.